**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAIME MACIAS MARTINEZ,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | CASE NO. 1:14-CV-1070-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER<br><br>(Doc. 12) |

Plaintiff Jaime Macias Martinez, by his attorneys, Law Offices of Lawrence L. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.  Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

**I.     Background**

   A. Procedural History

   In December 2010, Plaintiff applied for supplemental security income and disability insurance benefits.  Plaintiff alleged an onset of disability date of July 7, 2009. The Commissioner

initially denied the claims on May 11, 2011, and upon reconsideration again denied the claims on November 9, 2011.  On December 9, 2011, Plaintiff filed a timely request for a hearing.

On January 10, 2013, and represented by counsel, Plaintiff appeared and testified with the assistance of a Spanish interpreter a hearing presided over by Danny Pittman, Administrative Law Judge ("the ALJ").  See 20 C.F.R. 404.929 et seq.  An impartial vocational expert, Jose L. Chaparro ("the VE"), also appeared and testified.

On February 1, 2013, the ALJ denied Plaintiff's application.  The Appeals Council denied review on May 8, 2014.  The ALJ's decision thus became the Commissioner's final decision.  See 42 U.S.C. § 405(h).  On July 8, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B. <u>Relevant Record</u>

Plaintiff's appeal is not based on the ALJ's severity or RFC findings. He only appeals the ALJ's finding at step five, that, given the ALJ's severity and RFC findings, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Plaintiff specifically states that he does not dispute the ALJ's characterization of Plaintiff's testimony and the medical record. Hence, the record will be only very briefly summarized here.

At the time of the hearing, Plaintiff was 42 years old, and weighed 260 pounds. He testified that he had attended some of first grade in Mexico and came to the United States in 1985. He could not read or write in English or Spanish.  He worked as a roofer for about fifteen years and had his own roofing repair business in 2006. Plaintiff sustained a work-related injury in July 2009. He complained of debilitating pain in his knees and shoulders, which prevented him from doing most things. Plaintiff had a California driver's license and drove his children to school about three days a week. He took care of his personal grooming, but with much pain. He could not hold anything, prepare meals, or do chores except occasionally on good days. He only slept a few hours a night and could not concentrate. He took over-the-counter medication for pain, but it did not control his pain.

Physicians found that Plaintiff had various impairments in both knees and both shoulders including degenerative joint disease of the bilateral knees, bilateral shoulder impingement,

2

bilateral rotator cuff tendinitis, and osteoarthritis. Plaintiff was also evaluated for mental health conditions and was found to have a psychiatric disability caused by his orthopedic disability. He was recommended fifteen psychological visits, followed by gradual reduction as long as beneficial. Plaintiff declined the offered treatment.

### C. Vocational Expert Testimony

At the administrative hearing, the VE classified Plaintiff's past work as roofer (DOT # 866.381-010, medium, SVP 7). The ALJ asked the VE to assume a hypothetical person of the same age, education, and RFC as Plaintiff. He testified that such a person could not perform Plaintiff's past relevant work.

The ALJ asked whether there would be other jobs available for this hypothetical person. The VE clarified that they assumed "no significant English fluency" in the hypothetical, and opined that the hypothetical person could perform the light, unskilled work of paper pattern folder (DOT # 794.687-034, light, SVP 1). The hypothetical person could also perform sedentary unskilled work, represented by a sample of fourteen titles in nut production, including nut sorter (DOT # 521.687-086, SVP 2), and fifty-two titles of production workers, including final assembler (DOT # 713.687-018, SVP 2). The VE testified that there were a significant number of these jobs available nationwide and in California. The VE further testified that the same jobs would be suitable if Plaintiff were limited to simple, repetitive, tasks. The VE clarified that no more than the two sedentary examples offered, out of the sedentary occupational titles, would be available because of the English fluency.

The ALJ asked the VE to assume the same hypothetical individual but add that he would be off task at least twenty percent of the time due to pain. The VE testified that there would not be any work for this individual. The ALJ inquired whether his testimony was consistent with the DOT, to which the VE responded affirmatively.

### D. Disability Determination

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. He found that Plaintiff had the following severe impairments –bilateral shoulder degenerative joint disease, obesity, osteoarthritis, bilateral

knee degenerative joint disease status post total knee replacement left knee, and thoracic degenerative disc disease– which significantly limited his ability to perform basic work activities. He found that Plaintiff had the following non-severe impairments –possible coronary artery disease, history of alcohol use or abuse, dyslipidemia, history of right hand fracture, and depressive disorder –which did not cause more than a minimal limitation in his work activity. The ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment. He found that Plaintiff had the RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to four hours in an eight-hour work day, and sit for up to six hours in an eight-hour work day with normal breaks. He found that Plaintiff could frequently balance or climb ramps or stairs, occasionally stoop, kneel, and crawl, and occasionally climb ladders, ropes, or scaffolds. He found that Plaintiff could do no work at or above shoulder level and must avoid concentrated exposure to hazards.  The ALJ concluded that Plaintiff was not capable of performing his past relevant work as a roofer and that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. Hence, he determined that Plaintiff was "not disabled."

## II. **Legal Standard**

### A. The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated

regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g).

      B. <u>Standard of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If an ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g). Substantial

evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

**III.    Discussion**

Plaintiff argues that the VE identified job positions that were inconsistent with the ALJ's RFC determination. The ALJ found that Plaintiff could do no work at or above shoulder level, and that Plaintiff may be illiterate and is able to communicate in English. Plaintiff argues that the VE found that Plaintiff could perform several job positions which had descriptions in the Dictionary of Occupational Titles ("DOT") that required frequent reaching and the ability to read and write in English.

A.    Applicable Law

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p. "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs." *Id*. "Information about a particular job's requirements […] may be available […] from a VE's or VS's experience in job placement or career counseling." *Id*. A VE may be able to provide more specific information about jobs or occupations than the DOT. *Id*.

An ALJ may rely on the testimony a VE in meeting his burden at step five to determine that there is other work existing in the national economy that the claimant is able to perform. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). An ALJ cannot rely on the VE's testimony without inquiring whether it conflicts with the DOT and obtaining a reasonable explanation for any apparent conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). "An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be able to perform that job." *Tovar v. Colvin*, 2015 U.S. Dist. LEXIS

3997, *9-10 (C.D. Cal. Jan. 12, 2015)(*citing Tommasetti v. Astrue*, 533 F.3d 1035, 1042-43 (9th Cir. 2008)). If the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

### B. Overhead Reaching

Plaintiff argues that the job descriptions of the occupational titles identified by the VE include frequent or constant reaching, including overhead reaching, from which Plaintiff is precluded. Therefore, he argues, the ALJ erred in accepting the VE testimony that Plaintiff could perform these jobs without explanation of the deviation.

The job descriptions for the occupational titles given by the VE require frequent or constant reaching, which can include reaching in any direction. However, with regards to these identified occupational titles, the required reaching is not overhead. A paper pattern folder "Folds pattern pieces for complete garment and inserts them into envelope for shipment." DOT 794.687-034. A nut sorter "Observes nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks[, and] places defective nuts and foreign matter into containers." DOT 521.687-086. A final assembler "Attaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes." DOT 713.687-018. It is clear that the reaching required to perform these occupations is not overhead, and is consistent with Plaintiff's RFC. Plaintiff's reaching limitation is only limited as to overhead reaching, and was not limited in frequency or as to other reaching. Plaintiff had the RFC to lift twenty pounds occasionally which implies forward reaching. Hence, the VE's testimony did not conflict with the DOT in regards to Plaintiff's reaching limitations and the ALJ's finding that jobs exist in significant numbers in the national economy that Plaintiff can perform due to his physical limitations is supported by substantial evidence in the record.

### C. Ability to Communicate in English

Plaintiff argues that the VE's testimony that Plaintiff could perform certain jobs conflicted

with the evidence that he could not communicate in English. However, at step five, the ALJ found that Plaintiff could communicate in English. To the extent that Plaintiff argues that the ALJ's finding that Plaintiff could communicate in English was not supported by substantial evidence, the Court finds that it was. Although Plaintiff utilized the assistance of an interpreter at the administrative hearing and his medical examinations, the ALJ noted that the record also demonstrates that Plaintiff received a certificate for completing a course at a vocational school where he received training on a computer, and that he had managed his own roof repair business in 2006. Plaintiff's orthopedic surgeon, indicated in his notes that Plaintiff was "apparently well-understanding English." Plaintiff had lived in the United States for over twenty-five years and has worked during most of that time, but testified that he knew only two or three words of English, casting doubt on his credibility with regards to his ability to communicate in English. Plaintiff also testified that he sometimes tried to communicate in English but was not understood. However, the ALJ conceded that Plaintiff was illiterate, despite credibility concerns. Plaintiff also argues that the VE testimony that Plaintiff can perform certain occupations conflicts with his inability to read or write.

Literacy or education level is a vocational factor relevant only to the step five inquiry and not to the existence of a disability. *Silveira v. Apfel*, 204 F.3d 1257, 1261 n.4 (9th Cir. 2000). The ability to speak, read and understand English may be considered an educational factor. 20 C.F.R. § 416.964 (b)(5), 416.964(b)(5). "[W]e consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do." *Id*.

Illiteracy means the inability to read or write. 20 C.F.R. § 416.964 (b)(1). "A claimant is not per se disabled if he or she is illiterate." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). "[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(i). "[T]he functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English." *Id*.

with the evidence that he could not communicate in English. However, at step five, the ALJ found that Plaintiff could communicate in English. To the extent that Plaintiff argues that the ALJ's finding that Plaintiff could communicate in English was not supported by substantial evidence, the Court finds that it was. Although Plaintiff utilized the assistance of an interpreter at the administrative hearing and his medical examinations, the ALJ noted that the record also demonstrates that Plaintiff received a certificate for completing a course at a vocational school where he received training on a computer, and that he had managed his own roof repair business in 2006. Plaintiff's orthopedic surgeon, indicated in his notes that Plaintiff was "apparently well-understanding English." Plaintiff had lived in the United States for over twenty-five years and has worked during most of that time, but testified that he knew only two or three words of English, casting doubt on his credibility with regards to his ability to communicate in English. Plaintiff also testified that he sometimes tried to communicate in English but was not understood. However, the ALJ conceded that Plaintiff was illiterate, despite credibility concerns. Plaintiff also argues that the VE testimony that Plaintiff can perform certain occupations conflicts with his inability to read or write.

Literacy or education level is a vocational factor relevant only to the step five inquiry and not to the existence of a disability. *Silveira v. Apfel*, 204 F.3d 1257, 1261 n.4 (9th Cir. 2000). The ability to speak, read and understand English may be considered an educational factor. 20 C.F.R. § 416.964 (b)(5), 416.964(b)(5). "[W]e consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do." *Id*.

Illiteracy means the inability to read or write. 20 C.F.R. § 416.964 (b)(1). "A claimant is not per se disabled if he or she is illiterate." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). "[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(i). "[T]he functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English." *Id*.

Several cases have been remanded for the ALJ's failure to address the discrepancy between the claimant's literacy and the finding that he or she could perform DOT jobs that required language levels of 1 and 2; however, in those cases, the VE did not address the claimant's literacy or the impact the illiteracy would have on the claimant's ability to perform the identified jobs. *See e.g.*, *Sanchez v. Colvin*, 2014 U.S. Dist. LEXIS 165774 (C.D. Cal. 2014); *Salcedo v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 144112 (E.D. Cal. 2014).

Here, the ALJ has sufficiently met his burden at step five. The DOT descriptions for the occupational titles offered by the VE do not comport with Plaintiff's limitations. Each occupational title requires at least Level 1 language skills, which require some ability to read and write. The ALJ found that Plaintiff was illiterate but could communicate in English. He explicitly addressed Plaintiff's claims that he could not communicate in English, and found that Plaintiff could communicate in English sufficiently for unskilled work. In examining the VE, the proposed hypothetical persons were ones with "no significant English fluency." The VE was present during the ALJ's examination of Plaintiff and was directed to assume a hypothetical person with Plaintiff's education and experience. The ALJ and the VE had a conversation regarding Plaintiff's English language capabilities – the VE, referring to Plaintiff's testimony, indicated that a self-employed roofing business would require bookkeeping and the ability to deal with suppliers. The hypothetical person, for whom a significant number of jobs existed that he could perform, was one without English fluency and could not read or write in English or Spanish. The VE emphasized this lack of fluency assumption in giving his opinion. The VE explained the impact illiteracy would have on his ability to perform the jobs identified. He testified that Plaintiff's language abilities limited his job options and there was only one light-work job and two sedentary jobs available to the hypothetical person when assuming no significant English fluency.

Furthermore, the DOT descriptions for the three occupational titles identified, described in the preceding section, do not require any reading or writing, or even speaking in English. They require that the performer work with things rather than data or people –folding paper, sorting nuts, and attaching pieces to optical frames using hand tools.

Therefore, although Plaintiff was found to be illiterate but able to communicate in English,

9

the ALJ relied on the VE's expertise, explained the deviation, and the record contains persuasive evidence to support the deviation. Accordingly, the ALJ's finding at step five is supported by substantial evidence.

## IV.    Conclusion and Order

For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.
IT IS SO ORDERED.

Dated:   **September 5, 2015**              **/s/ Sandra M. Snyder**
                                            UNITED STATES MAGISTRATE JUDGE